NIELSON v. PETERSON et al. (PETERSON, intervener).

No. 1680. Decided May 11, 1906 (85 Pac. 429).

MORTGAGES—PARTIES — VALIDITY — JOINDER OF WIFE.—Under Revised Statutes 1898, section 1155, providing that, if the owner of a homestead is married, no conveyance or incumbrance of the premises, selected and recorded as a homestead prior to the conveyance or incumbrance, is valid, unless both husband and wife join in the execution of the same, and section 1150, authorizing either a husband or wife to select and record a homestead, where no declaration of homestead was made by either the husband or wife, a mortgage given by the husband alone was valid, and foreclosure and sale thereunder transferred the title to the mortgagee subject to the right of redemption and to the wife's one-third interest should she survive the husband.[1]

STRAUP, J., dissenting in part.

APPEAL from District Court, San Pete County; Ferdinand Erickson, Judge.

Action by Swen O. Nielson against Otto Peterson, in which Ellen Peterson intervened. From a judgment in favor of plaintiff, intervener appeals.

AFFIRMED.

---

[1] Cook v. Higley, 10 Utah 228, 37 Pac. 336.

*W. D. Livingston* for appellant.

*Jacob Johnson* for respondent.

APPELLANT'S POINTS.

The principle, if not the sole object of homestead exemption laws is to protect debtors and their families in the possession and enjoyment of their homes, so as to give the wife and family a place to lay their head. (15 Am. and Eng. Ency. Law [2 Ed.], 526; *Parsons v. Livingston* [Iowa], 77 Am. Dec. 125.)

These statutes have almost universally held that they are to be liberally construed. The courts do not stick to the letter of the statutes but give effect in accordance with their letter and spirit. (15 Am. Eng. Ency. Law [2 Ed.], 533, and cases cited from almost every state; *Bunker v. Coons,* 21 Utah 164; *Kimball v. Salisbury,* 17 Utah 381; *Kimball v. Salisbury,* 19 Utah 161.)

The selection in this case is sufficiently manifest by ownership residence and occupation. (*Kimball v. Sillisbury,* 19 Utah 161; *Kimball v. Sallisbury,* 17 Utah 381.)

The constructive notice which he had by reason of possession, ownership and occupancy of the homestead by appellant and her husband would in itself answer the purpose of recording. (*Wells Fargo v. Smith,* 2 Utah 39; *Land & Livestock Co. v. Dixon,* 10 Utah 334.)

"No act on the part of a husband or father, or a wife or widow, or any person, as might estop him or her personally from claiming a homestead right, can possibly debar others, who have rights therein, from their interest. Such rights of others render his own inviolable, since they are inseparable from his. (Waples Homestead and Exemptions, pp. 538, 546, quoted in *Bunker v. Coons,* 21 Utah 164.)

Where a mortgage upon a homestead is executed by the husband, without the wife joining in the execution, it has no validity, as a lien upon the premises. (*Moss v. Warner,* 10 Cal. 296; *Brooks v. Hyde,* 37 Cal. 366; *Watts v. Galligher,* 97 Cal. 57; *Mabury v. Ruiz,* 58 Cal. 11.)

### RESPONDENT'S POINTS.

We insist, that a husband has a lawful right to sell or encumber his real estate, even though it is exempt as a homestead, subject to the inchoate right of the wife in such property. (*Cook v. Higley,* 10 Utah 229; *Loewenthal v. Coonan,* 67 Pac.; *Gladney v. Sydnor,* 95 Am. St. Rep. 517; *Hoppe v. Hoppe,* 37 Pac. 894.)

### STATEMENT OF FACTS.

The record in this case shows that on April 1, 1901, and for a long time prior thereto, Otto Peterson and his wife, Ellen Peterson, owned, claimed and occupied lot 1, in block 24, plat A, of Fairview city, San Pete county, Utah, as their homestead. On April 19, 1901, Otto Peterson, who held the legal title to the homestead, executed and delivered to Swen O. Nielson, respondent herein, a mortgage to secure a debt of $311, which he (Peterson) was owing to said Nielson. The mortgage was duly recorded in the records of San Pete county, where the property sought to be incumbered is situated. Default having been made in the payment of the indebtedness for which mortgage was given, Nielson, on the 4th day of April, 1905, brought suit in the Seventh judicial district court in and for San Pete county for the foreclosure of the mortgage. Summons was duly issued and served on Otto Peterson, who failed to appear or answer in said suit. His default was duly entered. Ellen Peterson (wife of Peterson), who had not joined in the execution of the mortgage, filed her complaint in intervention, alleging in substance, that she was the wife of the defendant, that the mortgaged property described in plaintiff's complaint was her home, was exempt as such, and that the mortgage executed by her husband, Otto Peterson, was void because she had not joined in its execution. On June 5, 1905, the cause came on for hearing, and the court, after hearing the evidence, found the facts in accordance with plaintiff's complaint, made and entered a decree and order of sale which is in the usual form in such cases,

except that it provides for the sale of the defendant's (Otto Peterson's) interest only in and to the mortgaged premises, with the following proviso: "The intervener herein, Ellen Peterson, who is the wife of the defendant herein, and whose rights to the said premises and every part thereof is not affected by this decree." And again, at the conclusion of the order of sale: "Subject, however to any and all legal rights which the said intervener, Ellen Peterson, as the wife of Otto Peterson, may have in and to said property, and every part thereof." From this decree, Ellen Peterson, intervener, has appealed to this court.

McCARTY, J., after making the foregoing statement of the case, delivered the opinion of the court.

Appellant insists that the mortgage is absolutely void, for the reason that she did not join in its execution and was in no way a party to it. On the other hand, it is contended that Otto Peterson, the mortgagor, had a right to mortgage the land in question, notwithstanding it was occupied by himself and family and was their only home, subject to the statutory one-third interest of his wife, which interest, respondent contends, is an inchoate and contingent interest which would take effect only upon the death of Otto Peterson, should his wife survive him.

The sections of the Revised Statutes of 1898 of this state relating to homesteads, so far as material here, are as follows:

"Sec. 1147. A homestead consisting of lands and appurtenances, which lands may be in one or more localities, not exceeding in value with the appurtenances and improvements thereon the sum of fifteen hundred dollars for the head of the family, and the further sum of five hundred dollars for his wife, and two hundred and fifty dollars for each other member of his family, shall be exempt from judgment lien and from execution or forced sale, except as provided in this title.

"Sec. 1148. If the homestead claimant is married, the homestead may be selected from the separate property of the husband, or, with the consent of the wife, from her separate property.

"Sec. 1149. Any person who is the head of a family may make a declaration of homestead in the manner provided in the next two sections, but a failure to make such declaration shall not impair the homestead right.

"Sec. 1150. In order to record a homestead, the husband or other head of the family, or, in case the husband has not made such selection, the wife must execute and acknowledge a declaration of homestead, and file the same for record in the office of the recorder of the county or counties in which the land is situated.

"Sec. 1151.    The declaration of homestead must contain:    (1) A statement showing the person making it to be the head of a family; or, when the declaration is made by the wife, showing that her husband has not made such declaration.    (2)    A description of the premises.    (3) An estimate of their cash value."

The foregoing provisions of our statutes relating to the exemption and selection of homesteads are, in the main, taken from the Revised Code of North Dakota of 1899, section 3608 of which is as follows:

"The homestead of a married person cannot be conveyed or incumbered, unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife."

The Codes of California, Iowa, Nebraska, and several other states contain provisions almost identical with section 3608 of the Revised Code of North Dakota of 1899.    The courts of those states have uniformly held that under this provision a husband cannot legally incumber the homestead, unless his wife joins in the execution and acknowledgment of such conveyance or incumbrance.

Section 1155 of the Revised Statutes of Utah of 1898, provides:

"If the owner is married, no conveyance or incumbrance of, or contract to convey or incumber, the premises *selected and recorded as a homestead prior to the time of such conveyance, incumbrance, or contract,* is valid unless both the husband and wife join in the execution of the same."

By a comparison of this provision of the statutes of this state with the corresponding provision of the Codes of the states mentioned, it will be seen that that portion of section 1155 of our Code which we have italicized is not incorporated in the provision of the Codes relating to the same matter of the states referred to.    Therefore, the decisions of those states bearing upon the decisive question under consideration, viz., the validity of the mortgage, are of but little, if

any, value as a guide in construing section 1155 of our own Code. It would seem, however, that, if the Legislature had intended this section to receive the same construction as is given the corresponding section of the Codes of the states mentioned, it would not have limited the conveyances, incumbrances, etc., therein mentioned to such premises only as may be "selected and recorded as a homestead prior to the time of such conveyance," etc. It is a well-settled rule, and one that has been recognized and followed in this state, that a married man who holds the legal title to the homestead may, unless prohibited by statute, convey or incumber such homestead (subject to his wife's one-third interest in case she survives him), without the wife joining in the execution of the instrument. (*Cook v. Higley,* 10 Utah 228, 37 Pac. 336; 15 A. & E. Enc. Law [2 Ed.], 665-666; Waples, Homestead & Exemp. 370; Thompson, Homestead & Exemp. 230.)

The foregoing provisions of the statute do not confer upon the wife a vested estate or property right in the premises claimed as a homestead when such premises are owned by, and the legal title thereto is in, the husband. (A. & E. Enc. Law [2 Ed.], 668.)

"The wife has not an estate in homestead during the life of the husband, but a mere right of occupancy, or the right to have same exempted from her husband's debts, except where she unites in the conveyance, with privy examination; but, by uniting, she does not convey an estate of which she is seized, but merely consents that her husband may convey his estate, so as to waive her right to an exemption." (*Creath v. Creath,* 86 Tenn., 659, 8 S. W., 847.)

In the case of *Gee v. Moore,* 14 Cal. 472, this same question was involved (the nature and extent of the wife's interest in the homestead), and in the course of the opinion in that case the court say:

"It is the alienation by the owner, if a married man, which the statute declares shall be invalid with out the signature of the wife. The power of alienation, and not the nature of the husband's estate, is thus affected. And this power is restricted only so far as it may be necessary for the protection of the homestead. The invalidity only goes to the extent essen-

tial to this object. The husband can neither mortgage, sell, or otherwise alienate, the homestead, without the signature of the wife, so as to deprive themselves of the benefit of the humane and wise provisions of the law. For this purpose, the restriction was designed, none other. Subject to the protection thus extended, the absolute power of the husband continues."

In *Jenness v. Cutler*, 12 Kan. 500, it is said:

"It requires no instrument in writing to create such an interest, nor does it require any instrument in writing to destroy it. A merely going upon the premises, and occupying the same as a homestead, will create the interest. The abandonment of the premises as a homestead will destroy the interest; and, if the wife should die while occupying the premises as a homestead, she would have nothing that would descend to her heirs, or go to her executors or administrators, and nothing that she could devise or bequeath. The whole estate would continue to belong to her husband, and after her death he could sell and convey the same by a deed executed by himself alone." (*Smith v. Sherck*, 60 Miss. 491; *Godfrey v. Thornton*, 46 Miss. 677, 1 N. W. 362; *Stewart v. MacKey*, 16 Tex. 56, 67 Am. Dec. 609; *Howe v. Adams*, 28 Vt. 541.)

The only restrictions placed upon a married man in this state to prevent him from disposing of or incumbering the homestead, without his wife joining in the execution of the instrument by which it is sought to convey or incumber such homestead, are contained in section 1155. As we have heretofore observed, this section renders a conveyance or incumbrance of a homestead by a married man void only when such homestead has been selected and recorded prior to such conveyance or incumbrance, and both husband and wife have not joined in the execution of the instrument by which the homestead is conveyed or incumbered; but the statute nowhere prohibits the husband, when he holds the legal title to the homestead, from conveying or incumbering it when no declaration of homestead has been made and recorded as provided in sections 1150 and 1151, supra. While it is evident that the Legislature intended to place it within the power of the wife to protect the home, when, because of the husband's improvidence, financial misfortune, or for any other reason, he seeks to convey or incumber the homestead without her concurrence, we think it is also apparent that, under the provision of section 1155, in order for the wife to

exercise the right thus given her, she must execute and acknowledge a declaration of homestead and file the same for record as provided in sections 1150 and 1151. In the case before us no declaration of homestead was made and recorded by either the husband or wife. Therefore the mortgage under consideration was valid, and the foreclosure and sale of the premises transferred the title from the mortgagor to the mortgagee, subject to the right of redemption and to the intervener's (wife of mortgager's) one-third interest should she survive her husband, the mortgagor.

The judgment is affirmed, with costs.

BARTCH, C. J., concurs.

STRAUP, J. (concurring in part; dissenting in part).

I concur in the judgment to the extent of holding the mortgage valid so far as it affects the defendant Otto Peterson, but dissent from the holding that the mortgage impaired or defeated the right of the intervener, Ellen Peterson, to claim and preserve the homestead, or that the mortgage was at all binding upon her, or that it in any way affected any of her rights. It may be conceded that a mortgage executed only by a married man upon a homestead not selected and not recorded is not void as to him, as it would be if the homestead were selected and recorded, and that he may lawfully mortgage whatever interest he may have in and to the property. But he cannot, by his act alone, mortgage or convey any right or interest that the wife may have in and to the homestead sought to be mortgaged or conveyed. The undisputed evidence shows that the realty in question was the only real estate owned or possessed by the Petersons, that it did not exceed $800 in value, that at the time of the execution of the mortgage and long prior thereto the property was and had been occupied by them as their home and residence, that the defendant was a married man and that the intervener was his wife, and that all these facts were known to the plaintiff at the time of the execution of the mortgage. It is conceded by Justice McCarty that the husband alone by his deed of

conveyance cannot defeat or impair the wife's statutory interests given her in lieu of dower in and to the real estate possessed by him at any time during the marriage. Now the homestead statute gives the wife as well as the husband the right to claim and preserve the homestead. In addition to the sections of the statute quoted by Justice McCarty, section 1152 provides:

"It shall be the privilege of either the husband or the wife to claim and select a homestead to the full extent prescribed in this title, on the failure of the other, being the judgment debtor, to make such claim or selection."

It is not claimed that the husband made any kind of claim to this or to any other realty as a homestead, or that the Petersons owned or possessed any other realty. The right, then, which is given to the wife by the homestead statute to claim and preserve the homestead cannot be defeated or impaired by a mortgage executed alone by the husband and to which she had not given her consent. So far as affecting her interest, she had the same right to claim and preserve the homestead as though the mortgage had not been given. All that section 1155, declares is that no conveyance by a married man of a homestead selected and recorded is valid, unless both the husband and the wife join in the execution of the same; that is, if the instrument in such case is not executed by both, it is absolutely void, even as to the married person who alone executed it. But the section cannot be construed to mean that, if it is otherwise executed alone by the husband and under conditions so as to be binding upon him, therefore it is also binding upon another, who did not execute it, and who has a right or interest in and to the thing conveyed. Under such circumstance he can convey whatever interest he may have in and to the property, but he cannot, by his act alone, impair or defeat whatever right the wife has to claim and preserve the homestead, or any other right which she may have in and to the property. Mr. Waples, in his work on Homestead and Exemption, on page 545, says:

"The owner cannot waive any vested rights of his wife and children. When by law, through his dedication of his own property as a homestead, they become entitled to certain rights or interests in it, he alone cannot deprive them of it by any agreement to forego claiming exemption. Where 'estate of homestead' is created with this effect in favor of the wife, and where beneficiaries other than the owning head of the family have such rights, interests, or privileges conferred, though there be no such 'estate' recognized, the owner alone cannot waive exemption to their injury. No such act on the part of a husband or father, or of a wife or widow, or of any person, as might estop him or her personally from claiming a homestead right, can possibly debar others, who have rights therein, from their interests."

The case of *Cook v. Higley,* 10 Utah 228, 37 Pac. 336, is cited to support the doctrine that the husband can convey "his homestead without the wife's consent, subject only to her dower right on his death." That ruling was made under the exemption or homestead statute of 1888. Thereunder no one but "the debtor who was the head of a family" could claim the exemption or benefit of a homestead. The wife herself, unless she was the debtor and the head of a family, was given no right whatever to lay any kind of claim to the homestead, and had no right or interest in or to the property, except the right of dower. In construing and speaking of that statute, the court said:

"Therefore, independently of the husband, who is the head of the family, the wife has no claim upon the homestead, so long as he is living, except her right of dower, unless it be her separate property."

That statute is very unlike the one here under consideration. If not by the very letter, certainly in spirit, the statute which we now have expressly gives the wife the right to claim and preserve the homestead, and I cannot see how the mortgage not signed nor consented to by her can impair or defeat that right. It is conceded by Justice McCarty that this statute gave the wife a right to claim the homestead, and that the Legislature intended to place it within the power of the wife to protect the home against the improvidence or misfortune of the husband, or where he, for any other reason, sought to convey or incumber the homestead without her concurrence; but that, in order that she may do so, under the

circumstances of this case, it was a prerequisite that she make and record a declaration. Had she made and recorded a declaration, then, of course, the mortgage would have been absolutely void, even as to the husband who alone executed it. But what is the wife's right with respect to claiming the homestead when no declaration was made and recorded, and, for that reason, the mortgage held valid and binding as to the husband? To say that she is barred from claiming the homestead under such circumstance is because she failed to make and record a declaration, not because the mortgage was given. As to her, the mortgage has nothing to do with it. To say that under such circumstance she is barred from claiming the homestead is to say that no one can claim a homestead unless a declaration has been made and recorded. This the statute does not mean, for it, in express terms, declares, in section 1149, that a failure to make a declaration shall not impair the homestead right. And I do not understand the intended effect of the decision of the majority court to be that, unless a declaration is made and recorded, a claimant is barred from claiming a homestead, but that, because of the execution of the mortgage by the husband, the wife is not in position to claim and preserve the homestead, because a declaration was not made and recorded by her. This court in several cases, held, under the statute of 1896, which provided for the exemption of a homestead "to be selected by a judgment debtor consisting of land and appurtenances," that the homestead claimant was not required to formally select the premises as a homestead, but that the selection of the homestead is sufficiently manifested · by the fact of ownership, residence, use, or occupation, and that a sale thereof under execution may be set aside. (*Kimball v. Lewis,* 17 Utah 381, 53 Pac. 1037; *Kimball v. Salisbury,* 19 Utah 161, 56 Pac. 973.) It was, however, urged by counsel on argument that a distinction should be made between those cases and the one at bar because they were execution sales, while this is a foreclosure sale. The language of the statute is that a homestead consisting of lands, etc., is exempt "from

30 Utah—26

execution or forced" sale. So far as the wife is concerned, a sale of property on foreclosure of a mortgage not signed nor consented to by her is just as much a forced sale, and an involuntary alienation, as is an execution sale. Here the property was not charged with a lien and right of sale by any act on her part, or with her consent. As to her status, she is in no worse position than if the husband had voluntarily confessed judgment on a note, and, for value, waived all exemptions and benefits of homestead.

The necessary effect of the decision of the majority court ousts the possession of the defendant and of his family at the expiration of redemption, and lets the purchaser in with all right of title and possession, save alone the wife's inchoate or statutory interest given her in lieu of dower, which can only be asserted on the death of the husband. A holding which leads to such a result, I think, subverts rather than accomplishes the purpose of the statute, which is intended to secure and protect the home, not only for the benefit and protection of the husband, or the head of the family, but also for the benefit and protection of the wife and children as well and as a means of their support, and is intended to give the wife a privilege or right to lay claim to and preserve the home for herself and family. However, the decree, as made by the lower court, probably did not prejudice the right of the intervener, for the decree and the order of sale were subject to "any and all legal rights" which she may have in and to the property, and that her "rights to the said premises and every part thereof" are not to be affected by the decree. The court ought to have defined and adjudicated what those rights are. Neither by the findings nor the decree, or otherwise, did it do so. But the majority court had defined and adjudicated them to be that only of a dower right, from which I dissent.