## THOMPSON v. REYNOLDS et al.

No. 3712.    Decided February 1, 1922.    (204 Pac. 516.)

1.  APPEAL AND ERROR—APPEAL PERFECTED IN TIME BY FILING REC-
    ORD WITHIN EXTENDED PERIOD FOR BILL OF EXCEPTIONS. Under
    Comp Laws 1917, § 6992, providing that the judgment roll and
    bill of exceptions shall constitute the record on appeal, and
    section 7009, providing for dismissal of the appeal if the ap-
    pellant does not file such papers in the Supreme Court within
    30 days after perfecting an appeal, and Supreme Court rules
    2 and 3 to the same effect, an appeal could not be perfected
    without a bill of exceptions, and will not be dismissed where
    the judgment roll and bill of exceptions were filed in the
    Supreme Court within the time allowed for preparing the bill
    of exceptions as extended by proper orders of the trial court.

2.  TIME—EXTENSION "TO" STATED DATE PERMITTED FURTHER EX-
    TENSION ON THAT DATE. In an order extending the time for
    filing a bill of exceptions to a stated date, the word "to" is not
    a word of exclusion, but of inclusion, so that an order entered
    on the stated date, granting a further extension, was valid.[1]

3.  APPEAL AND ERROR—REMAND WITH LEAVE TO AMEND IS CON-
    CLUSIVE AS TO THE RIGHT TO AMEND. Where a judgment quieting
    title in plaintiff had been reversed on a former appeal because
    the pleadings did not authorize such relief, and the cause
    remanded, with directions to permit amendments to the plead-
    ings so as to present the equitable rights of the parties to the
    relief desired, the order permitting the amendment became
    the law of the case, and such amendments cannot be attacked
    on a subsequent appeal on the ground they stated a new cause
    of action.

4.  HOMESTEAD—DESERTED WIFE CAN RETAIN POSSESSION AGAINST
    CLAIMANT UNDER HUSBAND'S MORTGAGE. Under Comp. Laws
    1917, § 2992, forbidding one spouse to remove the other from
    the homestead without consent, and sections 2898-2900, 2905,
    2908, providing for the homestead as directed by Const. art.
    22, § 1, a wife who had been deserted by her husband, but who
    remained in possession of the homestead, cannot be dispos-
    sessed by the purchaser at foreclosure of a mortgage given
    by the husband, where the wife did not join in the mortgage,
    and was not a party to the foreclosure proceedings.

---

[1] *Jeremy Fuel Co.* v. *Denver & R. G. R. Co.*, 59 Utah 266, 203
Pac. 863.

Appeal from Third District

5. HOMESTEAD—WIFE IN POSSESSION HELD TO HAVE BEEN DESERTED BY HUSBAND. A wife who came to this country to join her husband and lived with him until she learned he had procured a divorce from her, whereupon she instituted and successfully maintained an action to set aside the divorce for fraud, and then immediately returned to their former home and remained there when the husband left the city and failed to provide any other home for her, was a deserted wife under the Homestead Act, and entitled to retain possession as against claimants under a mortgage executed by her husband alone, unless such claimants furnished her with another home.

6. HOMESTEAD—HUSBAND'S MORTGAGE IS VALID AGAINST HIS INTEREST ONLY. Where the husband and wife are occupying property standing in the name of the husband as their home without a declaration of homestead, a mortgage executed by the husband alone to a mortgagee, who knows the facts, is binding as to the interest of the husband in the homestead, but not as to the wife's interest.[2]

7. HOMESTEAD—DESERTED WIFE IS THE HEAD OF THE FAMILY. A wife who has been deserted by her husband, but who remains in the homestead, title to which stood in the name of her husband, is the head of a family within the Homestead Act.

8. PARTITION—WIFE ENTITLED ON PARTITION TO LIEN FOR TAXES PAID ON EXCESS VALUE. Where a wife had remained in possession of homestead property, which exceeded the valuation allowed as homestead and which could be partitioned, after sale on foreclosure of a mortgage executed by her husband alone, and paid all the taxes assessed against the property, she is entitled, on partition of the property, to a lien on the portion in excess of her homestead for its proportionate part of the taxes paid.

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson*, Judge.

Action by Matthew McB. Thompson against Charles Reynolds and Mary Atkinson. Judgment quieting title in plaintiff subject to a contingent interest in one-third thereof in

[2] *Nielson* v. *Peterson*, 30 Utah, 391, 85 Pac. 429; *Lumber Co.* v. *Vance*, 32 Utah, 74, 88 Pac. 896, 125 Am. St. Rep. 828; *Daniels* v. *Smith*, 51 Utah, 144, 169 Pac. 267.

the defendant Atkinson in the event she survives her husband, and the defendants appeal.

REVERSED AND REMANDED, with directions.

*C. E. Norton,* of Salt Lake City, for appellants.

*Marks & Jensen* and *Hurd & Hurd,* both of Salt Lake City, for respondent.

CORFMAN, C. J.

This is a long-continued controversy. It had its origin in an action of unlawful detainer begun by the plaintiff March 7, 1914, in the justice court of the third precinct of Salt Lake county against the defendant Charles Reynolds alone. The defendant Charles Reynolds appeared and answered the complaint by denying plaintiff's ownership of the premises involved and other allegations of the complaint as well, and for an affirmative defense alleged, among other things, ownership and possession of the premises in one Mary Atkinson, and also by reason of the title to real property being involved challenged the jurisdiction of the justice court to try the case. Subsequently Mary Atkinson filed a ''petition in intervention,'' asking that she be made a party defendant to the action. Thereupon the cause was certified to the district court of Salt Lake county, where a trial was had upon the original complaint and the answer of defendant Reynolds without pleadings on the part of Mary Atkinson, the trial court permitting her, however, upon consent of counsel, to present her claims, both legal and equitable, upon the answer of the defendant Reynolds. The district court, upon the first trial of the case, rendered a judgment and decree quieting title in the plaintiff. An appeal was then taken to this court, and, after a review of the record, in a majority opinion (53 Utah, 437, 174 Pac. 164), it was decided, without passing upon the merits, that neither the evidence nor the aforesaid pleadings in unlawful detainer supported the judgment and decree

quieting title.   It was therefore ordered that said judgment and decree be reversed, and that the cause be remanded, with directions to the district court to permit the respective parties to amend and recast their pleadings, and, when so done, to again try the case.   The order of this court was complied with, and the case tried for the second time upon the pleadings as amended.   In this instance plaintiff has, in his amended complaint, set forth the usual allegations of ownership, right of possession, etc., that are made in actions to quiet title to real property.   An answer for the defendant Mary Atkinson was also prepared and filed, which denies both the plaintiff's ownership and his right to possession of the premises, and pleads affirmatively ownership, possession, and right of possession in herself.   She also pleads as special defenses to and as counterclaims against the plaintiff's action certain affirmative matters, which, for the sake of brevity, may be stated to be as follows:   That defendant and one William J. Atkinson, a predecessor in interest of the plaintiff, are husband and wife; that the property involved was purchased by defendant's said husband with funds furnished by her, and that plaintiff has acquired the same with notice and knowledge that the legal title thereto was being held by her said husband in trust for herself, and that the husband's conveyance thereof was made in fraud of her rights therein; that defendant has acquired title to the property by adverse possession; that she has acquired title under an auditor's deed given upon sale of the premises for delinquent taxes pursuant to the statutes in such cases made and provided; that she possesses and occupies the premises by virtue of homestead rights accorded her as the wife of said William J. Atkinson under the Utah statutes; that she is the owner and holder of certain judgment liens against the premises; and, finally, that she has been denied the right of a redemptioner under certain foreclosure proceedings and sale of the premises to which she was not made a party.   The plaintiff filed a reply.

Upon the trial of the case the district court, after hearing the evidence, dismissed each and all of defendant's counter-

claims, and found for and quieted the title to the premises in the plaintiff, subject, however, to a contingent one-third interest in the defendant Mary Atkinson should she survive her said husband William J. Atkinson. It was further ordered that a writ of possession issue out of said court, commanding the sheriff of Salt Lake county to put the plaintiff in possession of said premises and the whole thereof. The rights of Charles Reynolds are affected only as the tenant of Mrs. Atkinson.

Defendants appeal. Numerous alleged errors are assigned by defendants as grounds for reversal of the judgment. They in effect challenge the sufficiency of the evidence to support the findings, and allege that the court's conclusions and judgment are contrary to law; that under the pleadings and the evidence in the case the trial court should have found against the plaintiff and for the defendants upon their several counterclaims. It is also urged that the district court erred in refusing to grant the defendants' motion to strike the plaintiff's amended complaint upon the ground that it changed the cause of action from one of unlawful detainer to an action to quiet title.

At the outset plaintiff has moved to dismiss the appeal and also to strike the defendants' bill of exceptions upon the grounds that they were not filed within the time required by our statutes and the rules of this court. As to the motion to dismiss the appeal the record shows that findings of fact, conclusions of law, and the decree were signed by the trial judge May 19, 1921, and filed in the district court May 20, 1921; on the application of the defendants, May 21, 1921, an order was made by said court extending the time within which to prepare, serve, settle, and file the bill of exceptions to July 30, 1921; July 30, 1921, upon application of the defendants, a similar order was made by the district court, extending the time to September 1, 1921; August 27, 1921, the order was made settling a bill of exceptions in which a transcript of the record was incorporated and made a part, and the same filed in this court August 31, 1921. Comp. Laws Utah 1917, § 6992, provides:

"The judgment roll and bill of exceptions, if there be one, shall constitute the record on appeal to the Supreme Court."

Section 7009, supra, provides:

"If the appellant shall fail to cause such papers (judgment roll and bill of exceptions) to be transmitted and filed in the Supreme Court within thirty days after the perfecting of the appeal, the appeal may be dismissed on motion of the respondent."

Rules 2 and 3 of this court are to the same effect, with the proviso, however, that the appellant may secure extensions of time. In this case the "record on appeal" included a bill of exceptions containing a transcript of the record, and it necessarily follows that if the time was properly extended to September 1, 1921, within which to prepare, serve, and file a bill of exceptions, then the "record on appeal" was filed in time. That is to say, that the appeal could not be perfected in this instance without a bill of exceptions, and therefore if the time for filing the bill of exceptions was properly extended by the court, then the record on appeal, of which it was made a part, was filed in this court in time.

The plaintiff points out that the first extension of time given to prepare, serve, and file a bill of exceptions was to July 30, 1921, and therefore he contends that the further extension attempted to be given by the district court on July 30, 1921, was one day too late. In other words, it is argued by the plaintiff that the preposition "to" as used by the court in the first order extending time was a word of exclusion, and not of inclusion of the date mentioned, July 30, 1921. The precise question here raised by plaintiff was before this court and passed upon at this term in a motion to strike the bill of exceptions in the case of *Jeremy Fuel Co.* v. *D. & R. G. R. R. Co.*, 59 Utah ——, 203 Pac. 863. In that case upon the same grounds as contended for by plaintiff in this appeal, we denied the motion to strike the bill of exceptions, and held that "to" as there used in the order extending time was a term of inclusion, and not one of exclusion of the date mentioned. Therefore, in the present case, defendants having, within 30 days after the entry of judgment, obtained an order extending time to July

30, 1921, within which to file their bill of exceptions, and on that day procured a further extension of time to September 1, 1921, and having filed in this court the record on appeal in which was included the bill of exceptions August 31, 1921, it must be held, under the ruling made in *Jeremy Fuel Co. v. D. & R. G. R. R. Co.*, supra, that both the motion to dismiss the appeal and to strike the bill of exceptions should be denied.

Coming now to the merits of defendants' appeal. The record is a voluminous one, and for the purposes of a review it will be impracticable to set forth in detail the evidence or even all of the findings of fact made therefrom by the trial court of which defendants complain. In substance and effect, however, the evidence shows and the trial court found that one William J. Atkinson, on or prior to June 28, 1912, was the owner in fee of a lot or parcel of land 91.5 feet by 707.5 feet in block 32, 10-acre plat A, Big Field survey, in Salt Lake City, Utah, on which was situated a four-room dwelling house or residence; that on said date, and for a long time prior thereto, the said William J. Atkinson and the defendant Mary Atkinson were and have since continued to be husband and wife; that upon said date the said William J. Atkinson, for a good and valuable consideration, executed and delivered to one C. S. Patterson, a mortgage on said premises to secure a promissory note of even date therewith in the sum of $500, payable one year after date, with interest at the rate of 8 per cent. per annum; that thereafter said mortgage was duly assigned and transferred to one V. D. Patterson, who, after the maturity thereof, by judicial proceedings commenced on or about June 30, 1913, foreclosed the same, and under foreclosure sale the said V. D. Patterson, the wife of said C. S. Patterson, became the purchaser thereof for the amount of the foreclosure judgment, interest, and costs, and secured a certificate of sale therefor. Thereafter said certificate of sale was assigned to the plaintiff herein, who, on February 19, 1914, received a sheriff's deed therefor. It further appears that the defendant Mary Atkinson did not sign the said mortgage, nor was she made a party defendant in the aforesaid

foreclosure proceedings. It further appears from the evidence that the defendant Mary Atkinson and said William J. Atkinson were married in Scotland in 1881; that thereafter they were from time to time separated from each other; that the premises involved in this action were purchased and acquired by the said William J. Atkinson in 1908, at which time he went into possession of them, and thereafter occupied them alone until September, 1911, when the defendant Mary Atkinson came to Salt Lake City and occupied the said premises with him until in November of the same year, when she ascertained for the first time that her husband, William J. Atkinson, had previously procured a decree of divorce from her. She then left the premises and commenced suit to vacate and set aside the decree of divorce upon the grounds of fraud, and was successful; that case being finally determined in her favor on appeal to this court July 8, 1913. *Atkinson* v. *Atkinson*, 43 Utah, 53, 134 Pac. 595, 47 L. R. A. (N. S.) 499. Immediately thereafter she again went into possession of the premises, and has since occupied them as her home, and in the absence of her husband, William J. Atkinson. The defendant Charles Reynolds, under a lease from Mrs. Atkinson, had occupied and used a portion of said dwelling house, and his interests are merely nominal, and are affected as a tenant only.

The plaintiff commenced the present action in the justice court against the defendant Reynolds March 7, 1914. March 30, 1914, in said justice court, the defendant Mary Atkinson petitioned to be made a party, and since that time in all the proceedings before the courts she has been represented by her attorney, and was permitted to and has actively engaged in taking a part in the defense and in the prosecution of her claims.

The trial court, under the evidence, has found against the defendants upon each and all of their several counterclaims. After a careful review of the record we can reach no other conclusion than that they were properly and justly denied with the exception of the claim of homestead rights to which we shall later refer. In the light of the facts disclosed by

the evidence it would subserve no good purpose to discuss the merits of the defendants', contentions in behalf of their several counterclaims other than that as. to the homestead rights. of the defendant Mary Atkinson. It must suffice to say that other than as to homestead rights the counterclaims are not supported by any substantial evidence in the record.

Nor is there any merit in the contention made by the defendants that the trial court erred in permitting the plaintiff to amend and recast his pleadings in the action so as to enable the district court to hear and determine the case on a complaint to quiet title. The case was first tried before the district court without proper pleadings, on the theory that the title should be quieted. It was so presented to this court on the first appeal. We then reversed the judgment and remanded the cause, with directions to the district court to permit the parties to amend and recast their pleadings so that the case might be properly tried and presented in accordance with equitable principles, which seemed to be the desire of all the parties interested in the case. Whether we were right or wrong in making that order it matters not. Having once made the order, it became the law of the case. Then, as now, the defendants in their appeal to this court contended that the judgment of the district court was not made in accordance with the principles of equity. We are therefore unable to conceive how they can with any degree of consistency now urge upon this court that it was error upon the part of the district court to permit the parties to amend and recast their pleadings so that the case might be tried in the manner they insisted it should be tried and determined.

Adverting now to the judgment and decree of the district court wherein the defendant Mary Atkinson is denied any homestead rights in the property involved: As pointed out, the evidence shows that in 1908, when William J. Atkinson acquired the property, she was then and has ever since continued to be his legal wife. She did not join her husband in the execution of the mortgage to C. S. Patterson, nor was she made a party to the foreclosure proceedings through

which the plaintiff acquired his interests in and title to the premises. The evidence further shows that since 1911 she has claimed the right to occupy and use said premises for a home for herself. Since 1911, with the exception of two short periods when she was compelled to remain away by reason of circumstances and conditions over which she had no control and was not legally or justly in fault or responsible for, she has continuously been in possession, occupying, using, and claiming the said premises as a home for herself. During this time she has had no other home, nor has her said husband owned or acquired any other for her. Then again it does not appear that the plaintiff or any other owner of the premises has in good faith provided, or offered to provide, defendant with another home since her occupancy and use of the premises aforesaid. It is also quite conclusively shown by the record that the plaintiff and his predecessors in interest had notice and actual knowledge of all of the above-stated facts. C. S. Patterson, who took the mortgage on the premises for $500 from William J. Atkinson, testified that the consideration for said mortgage was Attorney's fees and costs in "his [Atkinson's] cases against his wife"; that he did not ask Mrs. Atkinson to sign the mortgage, "because I knew it would be absolutely futile to ask her to sign it." It further appears from the evidence that this mortgage was made two days after the district court had vacated and set aside the decree of divorce in the case, *Atkinson* v. *Atkinson,* upon the general ground that it had been fraudulently obtained and the court had been without jurisdiction to render it. The record further shows that V. D. Patterson, the assignee of the mortgage, was the wife of C. S. Patterson, who had acted for and represented William J. Atkinson as an attorney in all matters and transactions concerning the premises under consideration and in the aforesaid divorce proceedings as well. The witness Stewart McLeese testified that C. S. Patterson delivered a deed to him for the premises executed by William J. Atkinson alone, subject to said mortgage of $500, and that as a matter of fact he (McLeese) paid no consideration therefor; that he never took possession of the premises

nor claimed any interest therein by reason of said deed; that said C. S. Patterson subsequently, July 26, 1913, caused him to make a deed to the premises to the plaintiff, M. McB. Thompson, subject to the aforesaid mortgage. The plaintiff, Thompson, testified as a witness that he had known William J. Atkinson for about 40 years; that 40 years ago he and William J. Atkinson had worked together in Scotland as painters. He also testified that he was familiar with the marital troubles of Mr. and Mrs. Atkinson, in which the premises in question figured as a prominent part; that "Mrs. Atkinson came and told me her marital troubles, and Mr. Atkinson told me his marital traubles, and about the house being improved. Oh, yes, I knew all that. Q. What did she [Mrs. Atkinson] say to you about this property? A. I couldn't say positively the words which she used; that would be impossible, but the gist of it was concerning her divorce proceedings, and that she thought she had a right to the property." It further appears from the evidence, and the trial court found the facts to be, that the premises in question have a value of $2,500, and that the defendant Mary Atkinson and her husband, William J. Atkinson, have lived separate and apart from each other since 1911.

The defendant Mary Atkinson very earnestly contends that under the facts and circumstances, substantially as hereinbefore detailed, she cannot be lawfully dispossessed of the premises, and that under the homestead laws of this state she is entitled to occupy and use them as her home. In support of her contention we are referred to Comp. Laws Utah 1917, § 2992, which provides:

"Neither the husband nor the wife can remove the other or their children from their homestead without the consent of the other, unless the owner of the property shall, in good faith, provide another homestead suitable to the condition in life of the family."

The foregoing section should be construed in connection with the general provisions of our statutes relating to homesteads under title 43, Comp. Laws Utah 1917. Section 2898 of that compilation, found under title 43, provides:

"A homestead consisting of lands and appurtenances, * * * not exceeding in value with the appurtenances and improvements

thereon the sum of $1,500 for the head of the family, and the further sum of $500 for the wife, and $250 for each other member of his family, shall be exempt from judgment lien and from execution or forced sale, except as provided in this title."

Section 2899 provides:

"If a homestead claimant is married, the homestead may be selected from the separate property of the husband, or, with the consent of the wife, from her separate property."

Section 2900 provides:

"Any person who is the head of a family may make a declaration of homestead  *  *  *  but a failure to make such declaration shall not impair the homestead right."

Section 2905 provides that—

"The phrase 'head of a family' as used in this title includes within its meaning" (among others) "husband or wife."

Section 2908 reads:

"In case the husband or wife desert his or her family, the exemption shall continue in favor of the one residing upon the premises."

These provisions of our statute become all important in view of the express mandate of our Constitution (section 1, art. 22), directing that the Legislature shall 4. provide by law for the selection by each head of a family an exemption from execution sale of a homestead, which may consist of one or more parcels of land, together with the appurtenances and improvements thereon, of the value of not less than $1,500.

From but a mere cursory reading of the provisions of our Constitution and the statutes above referred to it is obvious that it has become the settled policy of the people of this state that a home and shelter shall be provided for the members of a family no matter what may be the vicissitudes of life, and that any attempted alienation thereof on the part of either husband or wife, without the other's consent, shall become ineffectual as to the one who has not consented to an alienation. Keeping in mind the wise and humane purposes sought by this class of legislation and more especially the express provisions of the sections of our statutes which we have quoted, there can be no escape from the conclusion that

in this case, under the circumstances as shown by the evidence, the district court most grievously erred in its judgment by ordering that the plaintiff be given the possession of the premises occupied, used, and claimed by the defendant, Mary Atkinson, as a homestead. Within the full meaning of the statutes her husband had, under the facts and circumstances, deserted her, and thereby the right to an exemption of a homestead from forced sale continued in her. Moreover, in contemplation of law she was occupying and using the premises in question as a home for herself and claiming them as a homestead right at the very time her husband mortgaged them. Of that fact the mortgagee, as has been seen, had knowledge as did also his assignee and the plaintiff who became a purchaser at foreclosure sale. Our homestead laws would indeed be impotent for the accomplishment of the very purposes for which they were enacted if the husband may be permitted to alienate the home premises without the wife's consent and deprive her of her homestead rights therein as was apparently sought to be done in this instance by William J. Atkinson in order that he might discharge his personal obligations to an attorney for services rendered while fraudulently seeking to deprive his wife of her marital rights and then turn her homeless upon the streets.

In support of the contention made by plaintiff that the trial court was right in denying to the defendant Mary Atkinson any homestead rights, we are cited to the opinion in *Nielson* v. *Peterson et al.*, 30 Utah, 391, 85 Pac. 429, as being conclusive and controlling upon this court, unless that opinion be overruled. In the *Peterson Case* it was held that where no formal declaration of homestead had been made by either the husband or wife a mortgage given by the husband alone was valid, and that a foreclosure and sale thereunder transferred the title subject only to the right of redemption and to the wife's one-third interest should she survive the husband. But the facts in the *Peterson Case* were very different from the facts in the case we now have under consideration. In the present case the defendant Mary Atkinson had selected

the homestead and was to all intents and purposes legally occupying and using the premises as a home when the mortgage was executed by her husband alone. In other words her acts and conduct were such before the mortgage was given as to legally constitute the premises a selected homestead exemption within the meaning of our statutes. Then again, while the *Peterson Case* recognizes the power of alienation, as we read the opinion of the late Mr. Justice McCarty, it does not go so far as to hold that the husband, being the holder of the legal title, could by any kind of conveyance not joined in by the wife divest her of the homestead rights accorded to her by the statute. Then again it is to be noted that Mr. Justice McCarty, in speaking of and making a statement of the district court's judgment in *Nielson* v. *Peterson,* quotes therefrom and comments as follows:

"On June 5, 1905, the cause came on for hearing, and the court [district court], after hearing the evidence, found the facts in accordance with plaintiff's complaint, made and entered a decree and order of sale which is in the usual form in such cases, *except that it provides for the sale of the defendant's* [Otto Peterson's] *interest only in and to the mortgaged premises, with the following proviso:* 'The intervener herein, Ellen Peterson, who is the wife of the defendant herein, and whose rights to the premises and every part thereof is not affected by this decree.' And again, at the conclusion of the order of sale: *'Subject, however, to any and all legal rights which the said intervener, Ellen Peterson, as the wife of Otto Peterson, may have in and to said property, and every part thereof.'* "    (Italics ours.)

This court has frequently followed the *Peterson Case,* and in doing so has never construed the opinion of Justice McCarty to mean more than the separate mortgage given by Peterson to Nielson in that case was held to be effective and operative upon the individual rights of the husband, Peterson, alone. So, too, in the present case, as to the right of William J. Atkinson to separately alienate and divest himself of any homestead rights in the premises now under consideration, we have no doubt, but as to the homestead rights given by statute to his wife, Mary Atkinson, those are rights which belong to and are personal to her alone. If she is to be deprived of them under the facts and

circumstances here detailed, it must be by her own voluntary act of conveyance, independent of her husband's separate conveyance. Waples, Homestead and Exemption, p. 545; *Nielson* v. *Peterson, supra; Lumber Co.* v. *Vance,* 32 Utah, 74, 88 Pac. 896, 125 Am. St. Rep. 828; *Daniels* v. *Smith,* 51 Utah, 144, 169 Pac. 267.

For the reasons stated this court is of the opinion that the finding and conclusion of law of the district court that the defendant Mary Atkinson abandoned her homestead rights under the facts and circumstances shown by the record here was wrong; that the trial court should have concluded that Mary Atkinson not only had a contingent right to a one-third interest in said premises should she survive her said husband William J. Atkinson, but that she also had a homestead right in the premises to the extent and value of $2,000, she being, under the facts and circumstances, shown to be the head of the family (*Brooks* v. *Hotchkiss,* 4 Ill. App. 175; *Hotchkiss* v. *Brooks,* 93 Ill. 386); that subject to said homested estate of the defendant Mary Atkinson and the right to the use and occupancy thereof by the said defendant for and during her natural life and said contingent right of one-third part of said premises should she survive her said husband the plaintiff is the owner of the legal title to said premises and every parcel thereof.

There is another matter that should be given consideration in connection with the respective rights of the parties to this action; that is, with respect to the taxes paid on the premises involved. It appears from the record that the defendant Mary Atkinson has paid the taxes on the premises each year since 1910. As to the amount in the aggregate the record is not clear. She has also succeeded to the rights of the taxes and expenses paid on said premises by C. E. Norton for the year 1910. It further appears from the record that it will be practicable to partition said premises.

For the reasons stated, this being an equity case, it is ordered that the district court vacate, modify, and set aside its judgment and decree as heretofore rendered, and thereupon enter judgment and decree in accordance with the views and

findings of this court herein expressed, that is to say, that judgment and decree be entered quieting the legal title to the premises in the plaintiff, subject, however, to the inchoate right aforesaid and to a homestead estate in said premises to the defendant Mary Atkinson to the extent and of the value of $2,000 .for and during her natural life; that said property be partitioned accordingly; and that the legal title to every part and portion thereof be charged with a lien for the payment of taxes to said Mary Atkinson by the plaintiff as the portion set apart to him shall bear to the whole of said premises based on a valuation of $2,500, that is to say, the legal title of the plaintiff to said premises shall stand charged with a lien for the payment of one-fifth of the taxes paid on said premises by Mary Atkinson and ·her assigns since 1909. It is further ordered that the court may, if necessary, take further testimony in order to enable it to ascertain and determine the exact amount of taxes due and owing on said premises by the plaintiff when apportioned as aforesaid. Let each party pay one-half of the expenses of the partitioning of said property. Each party to pay his own costs on this appeal.

WEBER, GIDEON, THURMAN, and FRICK, JJ., concur.